AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| DAVID RAJAMIN, an individual, and EDITH GONZALEZ LARIOS, an individual,  et al. | ) ) ) |
| *Plaintiff* | ) |
| v. | ) ) Civil Action No. |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, a New York corporation, et al. | ) ) ) |
| *Defendant* | ) |

10 CV 7531

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   DEUTSCHE BANK NATIONAL TRUST COMPANY
280 Park Avenue
New York, New York 10017

See Attachment 1 for additional Defendants

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Leon Baer Borstein, Esq.
Borstein & Sheinbaum
420 Lexington Avnue
Suite 2920
New York, New York 10170

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

*CLERK OF COURT*

Date:   OCT – 1 2010

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

ATTACHMENT 1 to SUMMONS IN A CIVIL ACTION

ADDITIONAL DEFENDANTS:

FFMLT TRUST 2004-FFH4;
FFMLT TRUST 2005-FFA;
FFMLT TRUST 2005-FF2;
FFMLT TRUST 2005-FFH3;
FFMLT TRUST 2005-FFH4;
FFMLT TRUST 2005-FF4;
FFMLT TRUST 2005-FF8;
FFMLT TRUST 2005-FF11;
FFMLT TRUST 2006-FF1;
FFMLT TRUST 2006-FF3;
FFMLT TRUST 2006-FF4;
FFMLT TRUST 2006-FF5;
FFMLT TRUST 2006-FF6;
FFMLT TRUST 2006-FF7;
FFMLT TRUST 2006-FF8;
FFMLT TRUST 2006-FF9;
FFML TRUST 2006-FF11;
FFMLT TRUST 2006-FF13; and
FFMLT TRUST 2006-FF16, all New York Common Law Trusts,

BY, Deutsche Bank National Trust Company as trustee
    280 Park Avenue
    New York, New York 10017

JUDGE SWAIN

NAGLER & ASSOCIATES
David F. Berry (DB-1252)
2300 S. Sepulveda Boulevard
Los Angeles, California 90064
Tel: (310) 473-1200

LAW OFFICE OF HENRY BUSHKIN
Henry I. Bushkin (HB-9958)
1875 Century Park East
Los Angeles, California 90067
Tel: (310) 284-3400

BORSTEIN & SHEINBAUM
Leon Borstein (LB-8892)
James Sheinbaum (JS-0291)
420 Lexington Ave., Suite 2920
New York,  New York 10170
Tel: (212) 687-1600

Attorneys for Lead Plaintiffs DAVID RAJAMIN
and EDITH GONZALEZ LARIOS



10 CV    7531

RECEIVED
OCT - 1 2010
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID RAJAMIN, an individual, and EDITH GONZALEZ LARIOS, an individual, on behalf of themselves and a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, a New York corporation; FFMLT TRUST 2004-FFH4; FFMLT TRUST 2005-FFA; FFMLT TRUST 2005-FF2; FFMLT TRUST 2005-FFH3; FFMLT TRUST 2005-FFH4; FFMLT TRUST 2005-FF4; FFMLT TRUST 2005-FF8; FFMLT TRUST 2005-FF11; FFMLT TRUST 2006-FF1; FFMLT TRUST 2006-FF3; FFMLT TRUST 2006-FF4; FFMLT TRUST 2006-FF5; FFMLT TRUST 2006-FF6; FFMLT TRUST 2006-FF7; FFMLT TRUST 2006-FF8; FFMLT TRUST 2006-FF9; FFML TRUST 2006-FF11; | CASE NO.: <br><br><br> CLASS ACTION COMPLAINT <br><br> 1) DECLARATORY RELIEF |

1

FFMLT TRUST 2006-FF13; and )
FFMLT TRUST 2006-FF16, all New York )
Common Law Trusts, )

_____Defendants._____

Plaintiffs allege:

## INTRODUCTION

1.      Lead Plaintiffs DAVID RAJAMIN and EDITH LARIOS ("Lead Plaintiffs")
allege the following upon information and belief as to all matters.  Lead Plaintiffs' information
and belief is based on the investigation of their counsel.  The investigation included, but was not
limited to: (i) review and analysis of the various securitization agreements created by the various
investment banks that securitized mortgages into investment pools; these documents include
prospectuses, prospectus supplements, pooling and servicing agreements, trust documents, flow
mortgage loan purchase and warranties agreements, assignment and recognition agreements,
mortgage loan sale and assignment agreements, among other documents; (ii) testimony of
witnesses with first-hand knowledge of some of the events alleged herein; (iii) examination of
Defendants' Securities and Exchange Commission ("SEC") filings, press releases and other
public statements; (iv) review and analysis of court filings and opinions, and virtually all relevant
case law in the different jurisdictions of the United States; (v) a review of New York Real
Property Law ("RPL"), particularly section 254(9) relating to assignments and all related New
York cases; a review of the New York Estate Powers and Trusts Law; a review of the New York
Uniform Commercial Code; and (vi) review and analysis of media reports, congressional
testimony, scholarly articles and related material.  Many of the facts related to Lead Plaintiffs'
allegations are known only to the Defendants named herein, or are exclusively within their

2

custody or control.  Lead Plaintiffs believe that substantial additional evidentiary support for the allegations will be developed after a reasonable opportunity for discovery.

2.      This case deals with Class Action Plaintiffs questioning the Defendants' right to proceed with any action against them to foreclose on mortgages that were obtained to secure debt instruments evidenced by promissory notes originated by First Franklin, a division of National City Bank of Indiana ("First Franklin").[1]  Plaintiffs contend Defendants cannot establish legal or equitable rights to enforce the obligations evidenced by promissory notes of the Plaintiff Class members executed in favor of First Franklin.

3.      On or about May 5, 2006, Lead Plaintiff DAVID RAJAMIN ("RAJAMIN") borrowed $405,000 from First Franklin. The loan was secured by RAJAMIN's residence at 15030 Gale Avenue, Hacienda Heights, California 91745. The sub-prime mortgage loan was given to the RAJAMIN when First Franklin valued his home at $520,000.

4.      RAJAMIN executed a note in favor of First Franklin on May 5, 2006.  A copy of said note ("Rajamin Note") is attached as Exhibit "A."  On the same day, RAJAMIN executed a deed of trust in favor of First Franklin ("Rajamin Deed of Trust").  A copy of the Rajamin Deed of Trust is attached hereto as Exhibit "B."

5.      On or about May 17, 2006, Lead Plaintiff EDITH G. LARIOS ("LARIOS") borrowed $432,000 from First Franklin.  The loan was secured by LARIOS' residence at 8609 Samoline Avenue, Downey, California 90240.  The sub-prime mortgage loan was given to LARIOS when First Franklin valued her home at $540,000.

---

[1] Loans at issue that were originated prior to January 1, 2005 were apparently originated by First Franklin Financial Corporation ("FFFC"), and the first transfer from First Franklin to FFFC was not part of such transactions.

3

6.      LARIOS executed a note in favor of First Franklin on May 17, 2006.  A copy of said note ("Larios Note") is attached hereto as Exhibit "C."  On the same day, LARIOS executed a deed of trust in favor of First Franklin ("Larios Deed of Trust").  A copy of the Larios Deed of Trust is attached hereto as Exhibit "D."

7.      Prior thereto, on January 1, 2006, First Franklin Financial Corporation, a Delaware corporation that was a subsidiary of National City Bank of Indiana ("FFFC"), and HSBC Bank USA, N.A. ("HSBC") entered into to a Master Mortgage Loan Purchase and Servicing Agreement ("MMLPSA").  The MMLPSA governed the sale by FFFC of mortgage loans to HSBC.

8.      First Franklin allegedly sold Lead Plaintiffs' mortgage loans, Notes and related documentation, as well as those of other members of the Plaintiff Class, to FFFC.[2]  Once these loans and related documentation were purportedly transferred to FFFC, First Franklin relinquished any further rights to or interest in the loans allegedly sold.  FFFC then purportedly conveyed all right, title and interest in those loans and related documentation to HSBC for a considerable profit. Once FFFC purportedly sold the loans to HSBC, it relinquished any further rights to or interest in the loans allegedly sold. The sales of the Lead Plaintiffs' loans and other loans, however, were never properly documented.

9.      HSBC then purportedly sold Lead Plaintiffs' Notes and other loans and related documents to HSI Asset Securitization Corporation ("HSI"), pursuant to a Mortgage Loan Purchase Agreement ("MLPA") dated June 1, 2006, for a considerable profit.  Once HSBC purportedly sold these loans to HSI, it relinquished any further rights to or interest in the loans

---

[2] See footnote 1.

allegedly sold.  The sales of the Lead Plaintiffs' loans and other loans, however, were never properly documented.

10.     HSI then purportedly sold the Lead Plaintiffs' Notes and other loans and related documentation to the Defendant FFML TRUST 2006-FF11 ("2006-FF11 TRUST"), of which Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY ("DEUTSCHE") was Trustee, pursuant to a Pooling and Servicing Agreement ("PSA") dated August 1, 2006.  HSI made a substantial profit by purportedly selling Lead Plaintiffs' Notes to the Defendant Trust. Once these loans and related documentation were allegedly sold, HSI relinquished any further rights or interest in said loans.  The sales of the Lead Plaintiffs' loans and other loans, however, were never properly documented.  Section 12.03 of the PSA, as well as provisions in the MLPA, MMLPSA, and the Prospectus and Prospectus Supplement described in paragraph 20 herein, all provide that they are governed by and subject to New York law.

11.     In 2009, Defendants DEUTSCHE and 2006-FF11 TRUST recognized the failure to execute the endorsements and/or assignments necessary to convey Lead Plaintiffs' Notes to the 2006-FF11 TRUST.  These errors had to be overcome to enable DEUTSCHE and 2006-FF11 TRUST to assert ownership of Lead Plaintiffs' Notes as a prerequisite to commencing foreclosure proceedings against Lead Plaintiffs' real property.

12.     Defendants DEUTSCHE and 2006-FF11 TRUST then fraudulently caused a sham assignment ("Rajamin Assignment") of RAJAMIN's Deed of Trust and Note to be created on or about July 29, 2009. A copy of the Rajamin Assignment is attached hereto as Exhibit "E." Defendants DEUTSCHE and 2006-FF11 TRUST also fraudulently caused a sham assignment ("Larios Assignment") of Larios Deed of Trust and note to be created on or about April 10, 2009.  A copy of the Larios Assignment is attached hereto as Exhibit "F."

5

13.     The Rajamin Assignment and Larios Assignment were void ab initio.  First Franklin did not own Lead Plaintiffs' Notes on the dates of these assignments.  According to the various documents described herein, First Franklin divested all ownership interest in notes and deeds of trust that were part of the 2006-FF11 TRUST prior to September 6, 2006.  First Franklin therefore had nothing to assign in 2009, and these assignments were a legal impossibility.

14.     In 2004, 2005 and 2006, all Defendants similarly failed to comply with the dictates of their own trust documents and Sections 3 and 9 of the New York Uniform Commercial Code. Having recognized their mistakes, they all unlawfully executed sham documents to cover them.  Based upon the fiction they created, they then unlawfully began foreclosure proceedings against the Plaintiff Class borrowers.

15.     By 2007, First Franklin, the originator of the mortgage loans, no longer existed as a separate division; it was absorbed into National City Bank, which itself was a subsidiary of National City Corporation which later merged into PNC Bank.  In late 2006, FFFC was sold to Merrill Lynch. In May of 2008, Merrill Lynch closed FFFC's doors and then sold FFFC to an affiliated company, Merrill Lynch Mortgage Services Corporation.  Later in 2008, Bank of America purchased Merrill Lynch.

16.     By May 2009, RAJAMIN's home was worth approximately $250,000.  He sought mortgage modification relief.  The reduction offered was not meaningful.

17.     On July 10, 2009, a Notice of Default was sent to RAJAMIN, purportedly issued pursuant to the terms of the loan described in paragraphs 3 and 4 above.  A copy of said Notice of Default is attached hereto as Exhibit "G."

18.     By 2009, LARIOS' home was worth approximately $250,000.  She sought mortgage modification relief.  The reduction offered was not meaningful.

19.     On March 9, 2009, a Notice of Default was sent to LARIOS,  purportedly issued pursuant to the terms of the loan described in paragraphs 5 and 6 above.  A copy of said Notice of Default is attached hereto as Exhibit "H."

20.     The documents by which Defendant 2006-FF11 TRUST was created are lengthy, complex and difficult to understand. Included are: (a) the MMLPSA; (b) the MLPA; (c) the PSA; (d) a Prospectus; (e) a Prospectus Supplement; and (f) a sales contract between First Franklin and FFFC. The PSA alone is in excess of 300 pages with attachments. The PSA's definition of terms alone contains 39 pages.  Plaintiffs have copies of documents (b) through (e), but have not attached them because of their length; any party desiring copies will be provided with same upon reasonable notice.  As explained in paragraphs 54 and 59, Plaintiffs have not been able to obtain copies of documents (a) and (f).

21.     The PSA is the controlling document and provides for the creation of the 2006-FF11 TRUST, wherein defendant DEUTSCHE is designated as the trustee.  Section 2.01 of the PSA recites that HSI sold all of its right, title and interest in the mortgage loans and related documents to Defendant 2006-FF11 TRUST when the trust was created in 2006.

22.     The sole evidence of ownership of Lead Plaintiffs' Notes by Defendants 2006-FF11 TRUST and DEUTSCHE are the Rajamin Assignment and the Larios Assignment.  As noted above, these assignments were a legal impossibility if Lead Plaintiffs' mortgages are contained within the 2006-FF11 TRUST.

**THE PARTIES**

7

23.     Lead Plaintiff RAJAMIN is an individual who resides in Hacienda Heights in Los Angeles County, California.

24.     Lead Plaintiff LARIOS is an individual who resides in Downey in Los Angeles County, California.

25.     Defendant DEUTSCHE is a New York corporation with a principal place of business in New York, New York.

26.     Defendant 2006-FF11 TRUST is a trust organized and existing under the laws of the State of New York, which contains 10,253 mortgage loans originated by First Franklin having a principal balance in excess of $1.8 billion dollars as of July 1, 2006.  DEUTSCHE is the trustee of 2006-FF11 TRUST.

27.     Defendants FFMLT TRUST 2004-FFH4, FFMLT TRUST 2005-FFA, FFMLT TRUST 2005-FF2, FFMLT TRUST 2005-FFH3, FFMLT TRUST 2005-FF4, FFMLT TRUST 2005-FFH4, FFMLT TRUST 2005-FF8, FFMLT TRUST 2005-FF11, FFMLT TRUST 2006-FF1, FFMLT TRUST 2006-FF3, FFMLT TRUST 2006-FF4, FFMLT TRUST 2006-FF5, FFMLT TRUST 2006-FF6, FFMLT TRUST 2006-FF7, FFMLT TRUST 2006-FF8, FFMLT TRUST 2006-FF9, FFMLT TRUST 2006-FF13 and FFMLT TRUST 2006-FF16 (collectively with 2006-FF11 TRUST "Defendant Trusts") are each trusts organized and existing under the laws of the State of New York.  Each of those Defendant Trusts was created in 2004 through 2006, and contains thousands of mortgage loans originated by FFFC or First Franklin having total principal balances similar to 2006-FF11 TRUST.  DEUTSCHE is the trustee for each of these various Defendant Trusts.  Plaintiffs will seek leave to amend to insert the names of any additional trusts created in the years 2004 through 2006 for which DEUTSCHE acts as trustee that contain pools of mortgage loans originated by FFFC or First Franklin.  Each document

8

described herein creating the Defendant Trusts or allegedly transferring the mortgage loans and notes from the loan originator to each subsequent purchaser, and ultimately to the Defendant Trusts, provides that it is subject to New York law. Each PSA is identical with respect to the pertinent provisions governing DEUTSCHE's duties as Trustee. The Prospectus and Prospectus Supplement for each Defendant Trust contains identical language as to the pertinent provisions at issue. DEUTSCHE, as trustee, must operate in the same fashion with respect to each Defendant Trust. Each Defendant Trust was formed to qualify as a real estate mortgage investment conduit ("REMIC"). The issues as to each Defendant Trust are identical. The relevant conduct of each Defendant Trust is identical. Plaintiffs believe the certificates of each Defendant Trust are 100% owned by foreign financial institutions, often with all the certificates in a particular Defendant Trust owned by the same foreign financial institution. It would be judicially expeditious to resolve the same issues as to all the Defendant Trusts, which affect all members of the Plaintiff Class in the same manner, in one action. Moreover, any ruling as to DEUTSCHE made only as to one Defendant Trust would likely be equally applicable to all the Defendant Trusts, since DEUTSCHE acts as trustee in the same capacity for all the Defendant Trusts. All the Defendant Trusts would benefit by being parties hereto with the ability to assert defenses. There is thus a juridicial link between DEUTSCHE, the 2006-FF11 TRUST and all the other Defendant Trusts.

28.     Lead Plaintiffs seek relief on their own behalf and on behalf of a nationwide class of similarly situated individuals.

## JURISDICTION AND VENUE

29.     Jurisdiction exists pursuant to the Class Action Fairness Act, 28 U.S.C. sections 1332(d) (2) and 1453. All the Defendants are New York citizens, and many members of the

Plaintiff Class are citizens of states other than New York.  The claims of all members of the Plaintiff Class combined exceed $5 million.

30.     Venue is proper in this Court pursuant to 28 U.S.C. section 1391(b) inasmuch as all Defendants regularly conduct business in this District.

### FACTS RE: LEAD PLAINTIFF RAJAMIN

31.     RAJAMIN is 42 years old with a wife and five children.  He and his family have resided in their home at 15030 Gale Avenue, Hacienda Heights, California for approximately 10 years.  Currently, RAJAMIN is a self-employed truck driver.

32.     RAJAMIN purchased his home in 2001 for the sum of $203,000.  By 2006, the price of the home had appreciated to a value of $520,000.  First Franklin then offered RAJAMIN a loan of $405,000 on expensive subprime terms.  In 2009, RAJAMIN fell behind on his mortgage payments.

### FACTS RE: LEAD PLAINTIFF LARIOS

33.     LARIOS is 35 years old with a husband and two small children.  She and her family have resided at their home at 8609 Samoline Avenue, Downey, California for approximately 4 years.  LARIOS and her husband are both employed outside their home in the health care field.

34.     LARIOS purchased her home in 2006 for the sum of $540,000.  In 2009 LARIOS fell behind on her mortgage payments.

### FACTS AND CONTENTIONS RE: OWNERSHIP OF LEAD PLAINTIFFS' MORTGAGE NOTES

35.     Defendants DEUTSCHE and 2006-FF11 TRUST assert that 2006-FF11 TRUST owns Lead Plaintiffs' Notes.

36.     An actual controversy has arisen and now exists between Lead Plaintiffs, on the one hand, and the 2006-FF11 TRUST and DEUTSCHE, on the other hand, concerning the ownership of the Rajamin Note and the Larios Note.

37.     RAJAMIN alleges that the 2006-FF11 TRUST has no proper documentation evidencing its interest in the Rajamin Note and a real controversy exists as of July 29, 2009, when Defendants 2006-FF11 TRUST and DEUTSCHE asserted ownership to the Rajamin Note by recording the void Rajamin Assignment.

38.     LARIOS alleges that the 2006-FF11 TRUST has no proper documentation evidencing its interest in the Larios Note and a real controversy exists as of April 10, 2010 when Defendants 2006-FF11 TRUST and DEUTSCHE asserted ownership to the Larios Note by recording the void Larios Assignment.

39.     Lead Plaintiffs allege the 2006-FF11 TRUST is not the owner of their Notes and any actions taken based on its purported ownership of their Notes and Deeds of Trust are void.

40.     A New York trust can only be amended or revoked in whole or in part by obtaining written consent of all persons beneficially interested in a trust of property.  Lead Plaintiffs allege that neither the PSA nor the 2006-FF11 TRUST have been amended. Because the Defendant 2006-FF11 TRUST was created by the PSA, every sale, conveyance or other act taken in contravention of the terms of the PSA is void.

41.     The PSAs or other similar documents forming all of the Defendant Trusts contain language similar to or identical to that described in paragraphs 21 and 46 herein.

42.     By its terms, the 2006-FF11 TRUST is permitted to consist only of mortgage loans acquired from HSI. HSI represented to the 2006-FF11 TRUST that immediately prior to the transfer of the mortgage loans on the closing date, it had good title and was the sole owner of

11

each mortgage loan conveyed to the 2006-FF11 TRUST, and transferred all right, title and interest therein to DEUTSCHE as Trustee.

43.    The transactions required by the PSA thus made it mandatory for HSI to convey all right, title and interest in the 10,253 mortgage loans sold, including but not limited to mortgage notes and deeds of trust, to DEUTSCHE as Trustee of the 2006-FF11 TRUST as of September 6, 2006. HSI was also required to deliver the mortgage notes, deeds of trust and related documentation to Wells Fargo as custodian as of the Closing Date. This was not done, which necessitated the creation of the void Rajamin Assignment and the void Larios Assignment.

44.    Even assuming the Rajamin Assignment and the Larios Assignment from First Franklin to DEUTSCHE, as trustee for 2006-FF11 TRUST, were not fraudulent or void ab initio, they are still defective. The recorded assignments by MERS on behalf of First Franklin have neither the corporate resolution nor a power of attorney attached and recorded.

45.    To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage.

46.    In connection with the purported sales, transfers, assignments or pledges of Lead Plaintiffs' mortgage loans to the 2006-FF11 TRUST, HSI was required to deliver on September 6, 2006, their original mortgage notes, endorsed without recourse in blank by the last endorsee, including all intervening endorsements showing a complete chain of endorsement from First Franklin to the last endorsee. Specifically, Section 2.01 of the PSA and Exhibits "E" and "F" to the PSA require conveyance by ASI, on or before September 6, 2006, of the original mortgage note for each loan being acquired by the 2006-FF11 TRUST, bearing all intervening endorsements and showing a complete chain of endorsement, from First Franklin to the last

12

endorsee, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee. This was not done.

47.     Pursuant to Section 3-202 of New York's Uniform Commercial Code ("UCC"), a transfer of a negotiable instrument, such as a mortgage note, is perfected only by an endorsement on the note or by a separate "allonge" attached to the note and containing the endorsement and delivered to the transferee. Thus, even if the Rajamin Note or the Larios Note could otherwise be directly transferred from First Franklin to Defendants 2006-FF11 TRUST and DEUTSCHE in 2009, Lead Plaintiffs allege that Defendants 2006-FF11 TRUST and DEUTSCHE do not have their notes properly endorsed by First Franklin, nor is there an allonge for the transfer of these notes from First Franklin to the 2006-FF11 TRUST.

48.     The 2006-FF11 TRUST may only obtain assets from HSI and cannot acquire assets in any other manner. Any purchase of a mortgage loan or mortgage note by the 2006-FF11 TRUST (from any entity other than HSI) would be in contravention of the strict rules of the Trust and would therefore be void under New York Estate Powers and Trusts Law.

49.     It was a prohibited act for the 2006-FF11 TRUST to acquire these loans directly from First Franklin in 2009. Therefore, if First Franklin rather than HSI transferred the Rajamin Note and the Larios Note to the 2006-FF11 TRUST, then such transfers would be void ab initio.

50.     According to the PSA, HSBC purchased the 10,253 mortgage loans from FFFC. HSBC then sold them to an affiliated company, HSI. That conveyance was pursuant to the MLPA. In part 4 therein, HSBC warranted to HSI that it had good title to each mortgage loan. The MLPA provided that it was to be interpreted according to the law of the State of New York.

51.     HSI then allegedly sold the 10,253 loans to the 2006-FF11 TRUST, which then issued fifteen classes of certificates to be sold to the public. Underwriters purchased the

13

certificates and sold them in an offering.  In that connection, offering documents were issued.

These included the April 3, 2006 Prospectus and the Prospectus Supplement.  Both contained

detailed descriptions of the documentation that the 2006-FF11 TRUST purportedly would

receive to obtain and secure its interests in the loans.  HSI, as per Prospectus Supplement p. S -

43, for each loan included in the 2006-FF11 TRUST was required to deliver, on or before

September 6, 2006, "the original mortgage note, endorsed without recourse in blank by the last

endorsee, including all intervening endorsements showing a complete chain of endorsement from

the originator to the last endorsee...." This was not done.  The owner of 100% of all 15 classes

of certificates is apparently the same entity, which Plaintiffs are informed and believe is a foreign

financial institution.

52.     The Prospectus Supplement also states the following:

> "the Mortgage Loan Seller [FFFC] sold the Mortgage Loans,
> without recourse, to the Sponsor [HSBC].... The Sponsor [HSBC]
> will, in turn, sell, transfer, assign, set over and otherwise convey
> the Mortgage Loans, including all principal outstanding as of, and
> interest due and accruing after, the close of business on the Cut-off
> Date, without recourse, to the Depositor [HSI] on the closing date.
> Pursuant to the Pooling and Servicing Agreement, the Depositor
> [HSI] will in turn sell, without recourse, to the Trust [2006 FF11-
> Trust] all right, title and interest in and to each Mortgage Loan...."

FFML-2006-FF11 Prospectus Supplement at S-42.

53.     Despite the requirement for endorsement and transfer of the mortgage notes to the

2006-FF11 TRUST at the time the loans were allegedly transferred to the Trust, no such

endorsements or transfers were made.

54.     Lead Plaintiffs are informed and believe and thereon allege that the MMLPSA

between FFFC, HSBC and National City Home Loan Services, Inc., provides that FFFC sold all

of its right, title and interest in the 10, 253 loans to HSBC.  After that time, FFFC had no interest

in these loans.  On information and belief, the conveyance was a sale, without recourse, of all rights, title and interest of FFFC in and to the mortgage loans, and all rights and obligations arising under the documents contained therein, including but not limited to notes and deeds of trust, for each mortgage loan.  Lead Plaintiffs have not been able to obtain a copy of the MMLPSA, although it was required to be attached to the PSA as Exhibit "Q."

55.    Lead Plaintiffs are also informed and believe that the MMLPSA provides that it shall be deemed to have been made in the State of New York, be construed in accordance with the laws of the State of New York, and that the obligations, rights and remedies of the parties thereunder shall be determined in accordance with the substantive laws of the State of New York (without regard to conflicts of laws principles), except to the extent preempted by Federal law.

56.    Lead Plaintiffs are also informed and believe that the MMLPSA provides that HSBC was purchasing, and FFFC was selling, the actual mortgage loans and not securities. Accordingly, the parties intended to treat the transaction for Federal income tax purposes as a sale by FFFC, and a purchase by HSBC, of the mortgage loans.

57.    The transfers required by these various agreements were one from the holder of the note directly and explicitly to the subsequent purchaser, and ultimately to the 2006-FF11 TRUST, with each holder's name, business address, and mailing address or post office address either contained or endorsed thereon.

58.    Lead Plaintiffs are further informed and believe that the MMLPSA states that with respect to each mortgage loan being transferred, the mortgage file shall include the original mortgage note bearing all intervening endorsements endorsed 'Pay to the order of

_____,' without recourse and signed in the name of the last endorsee by an authorized officer.

15

59.     Lead Plaintiffs are further informed and believe and thereon allege that for loans of all members of the Plaintiff Class originated in 2005 and 2006, the sales agreement governing transfer of loans and related documentation from First Franklin to FFFC similarly provided that it was subject to New York law, similarly required each original note to be endorsed to bearer, and similarly constituted an absolute sale of the mortgage loans and all related documentation. Lead Plaintiffs have not been able to obtain a copy of that sales agreement.

60.     With an instrument payable to First Franklin, negotiation requires endorsement by the various holders which would then make it enforceable by a holder after the required chain of endorsements were affixed to the instrument.

61.     The Lead Plaintiffs' Notes had to be transferred to the 2006-FF11 TRUST in the following sequence:

      a.     Negotiation from First Franklin to FFFC;[3]

      b.     Negotiation from FFFC to HSBC;

      c.     Negotiation from HSBC to HSI;

      d.     Negotiation from HSI to the Trust.

62.     Negotiations of Lead Plaintiffs' Notes had to be in conformity with the PSA, as well as with the requirements of Articles 3 and 9 of the UCC.  The PSA and the UCC require an unbroken chain of endorsements from First Franklin to FFFC, from FFFC to HSBC, from HSBC to HSI and from HSI to the 2006-FF11 TRUST. Plaintiffs believe and thereon allege that Lead Plaintiffs' Notes were never actually endorsed or transferred to the 2006-FF11 TRUST; if they were transferred directly from First Franklin along with the Deeds of Trust via assignment on April 10, 2009 and July 29, 2009, respectively, such transfers were void.

---

[3] See footnote 1.

16

63.     2006-FF11 TRUST, as well as all the other Defendant Trusts, were formed so as to qualify as real estate mortgage investment conduits ("REMIC") under Section 860D of the Internal Revenue Code.  All transfers of mortgage loans to the Defendant Trusts were required to be absolute sales.  For the Defendant Trusts to qualify as a REMIC, after the mortgage loans were conveyed to the Defendant Trusts at their formation, neither the seller nor any prior seller could retain any further interest in these mortgage loans to convey at any later date.

64.     With the number of mortgages securitized, sold into pools and transferred to various entities around the world, it is likely that more than one entity asserts rights under Lead Plaintiffs' mortgages.  Moreover, a homeowner facing foreclosure has the right to understand the basis on which the entity attempting to foreclose is proceeding.  A degree of transparency is necessary.  Foreclosure is an equitable remedy and compliance with the law is required and not onerous to Defendants.  Any burdens are far outweighed by the benefits of a clearly established chain of title.

65.     The mortgage notes of the Plaintiff Class members, all of which were originated by First Franklin or FFFC, were allegedly securitized.  DEUTSCHE acts as trustee for each of the Defendant Trusts, which are created as part of the securitization process.  The documentation and language in the documentation for all these securitizations is very similar, and identical as to the pertinent provisions at issue.  Proper endorsements and transfers were not made of <u>any</u> of the notes of members of the Plaintiff Class purportedly contained in these securitizations. Plaintiffs believe that the holders of all classes of certificates of the Defendant Trusts are large financial institutions, in most cases foreign banks, and that often the same entity owns 100% of all classes of certificates issued by one or more of the Defendant Trusts.

///

## CLASS ALLEGATIONS

66.     Lead Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a nationwide Plaintiff Class of all persons similarly situated ("Plaintiff Class"), specifically, United States homeowners with mortgage loans originated by FFFC or First Franklin, allegedly in trusts created in 2004, 2005 and 2006 for which Defendant DEUTSCHE acts as trustee, whose mortgage notes Defendant Trusts claim to own or to have owned, and which homeowners have been claimed to be in default on their mortgage loans but whose interests in their homes have not yet been foreclosed.

67.     Common questions of New York law and of fact predominate over individualized issues. Some of the principal common issues are:

a.  Whether Defendants own or ever held proper title to mortgage notes of the Plaintiff Class.

b.  Whether Defendants lack standing and thus act without authority when they assert ownership of the mortgage notes without a proper chain of endorsements or allonge with respect thereto, in violation of the New York law that governs the Defendant Trusts.

c.  Whether the mortgage notes of members of the Plaintiff Class were required to be negotiated according to the terms of the Defendant Trusts in order for Defendants to assert ownership.

d.  Whether assignments of mortgage notes made years after the creation of the Defendant Trusts are sufficient to transfer ownership of those mortgage notes to the Defendants, when Defendants claim to, and are required by the terms of their trust documents to, have acquired the mortgage notes at the time the Defendant Trusts were created.

e. Whether the assignment of a mortgage note is void where the assignor divested all interest in the mortgage note years prior to the assignment.

f. Whether an assignment of a deed of trust by a purported nominee for the assignor is valid, where the purported nominee attaches and records neither the corporate resolution nor a power of attorney authorizing the nominee to enter into the assignment.

68.     The only individual questions concern the identification of members of the Plaintiff Class.  Identification can be made by records in the possession of Defendants.

69.     Notice can be provided to the Plaintiff Class by various means of communication, including mail.  Publication notice can be provided to supplement mailed notice.

70.     The Lead Plaintiffs' claims are typical of the claims of Plaintiff Class members. All are based on the same legal and remedial theories.  The Plaintiff Class members are too numerous to individually join in one action.  It is estimated that FFFC and First Franklin originated more than 150,000 mortgage loans to United States residents in the years 2004, 2005, 2006 that were purportedly conveyed through a series of complex transactions to the Defendant Trusts as described above, and that as many as a third of those mortgage loans have been claimed to be in default.

71.     Lead Plaintiffs will fairly and adequately protect the interests of all Plaintiff Class members in the prosecution of this action and to all matters relating to claims stated herein. They are similarly situated with, and have suffered similar injuries as, members of the Plaintiff Class they seek to represent.

72.     Lead Plaintiffs have retained counsel experienced in class action suits.  Counsel is familiar with the various means of securitization of the Plaintiff Class member loans utilized by

the various Defendants.  Neither the Lead Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

**Other Class Issues**

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, in that:

a. the losses suffered by the Plaintiff Class members are such that the prosecution of individual actions is impractical and economically unfeasible if not impossible;

b. the form of proof required is such that the prosecution of individual actions is impractical or economically unfeasible;

c. in the absence of a class action device, Plaintiff Class members would be left without a remedy for the acts alleged;

d. the prosecution of separate lawsuits by individual members of the Plaintiff Class would create the risk of inconsistent adjudications with respect to individual class members, which would establish incompatible standards of conduct for the Defendants, making concentration of the litigation desirable;

e. the claims of the Lead Plaintiffs are typical of the claims of the Plaintiff Class; and

f. no unusual difficulties are likely to be encountered in the management of this action as a class action.

74.     The Plaintiff Class is so numerous as to make it impracticable to join all members in this action. Based upon the investigation of counsel, the number of members of the Plaintiff Class is estimated to be as many as 50,000 United States residents.

75.     The Defendants have acted on grounds generally applicable to the members of the Plaintiff Class, as all Defendant Trusts were required to obtain title to notes of the Plaintiff Class

members at the time the Defendant Trusts were created, failed to do so in the same manner, and have attempted to cover over these mistakes in the same manner.

76.     Common questions of law and fact common to members of the Plaintiff Class predominate over questions affecting only individual members.

## FIRST CAUSE OF ACTION

### (Declaratory Relief (28 USC §2201(d))

### (By all Plaintiffs against all Defendants)

77.     Plaintiffs incorporate by reference each and every allegation in the preceding paragraphs.

78.     There exists an imminent and justifiable dispute between Lead Plaintiffs and Defendants 2006-FF11 TRUST and DEUTSCHE regarding ownership of Lead Plaintiffs' Notes. The same dispute exists between each member of the Plaintiff Class, on the one hand, and one of the Defendant Trusts and DEUTSCHE, on the other hand.

79.     Defendants 2006-FF11 TRUST and DEUTSCHE claim that the 2006-FF11 TRUST is the legal owner of the Rajamin Note and the Larios Note.  Lead Plaintiffs claim that these Defendants have no ownership interest in their Notes.

80.     The 2006-FF11 TRUST is bound by the laws of New York, and may receive title to mortgage loans and related notes only from HSI, only with the proper endorsements and only at the time the 2006-FF11 TRUST was created.

81.     There exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

82.     A judicial declaration is necessary and appropriate at this time to adjudicate the validity of the purported ownership of Lead Plaintiffs' Notes by Defendants DEUTSCHE and

21

2006-FF11 Trust, and the purported ownership of the notes of all Plaintiff Class members by DEUTSCHE and one of the Defendant Trusts.

83.     The Plaintiff Class members lack an adequate remedy at law.  No individual homeowner has the resources to litigate these issues, and the amounts at stake make it not cost effective to do so on an individual basis.  Moreover, damages are difficult to measure.  Plaintiffs therefore seek a permanent injunction, enjoining Defendants from foreclosing on properties owned by Plaintiff Class members without making a proper showing of ownership of any Plaintiff Class member's mortgage note.

84.     In connection with the Notices of Default and subsequent thereto, Lead Plaintiffs have incurred incidental damages, according to proof.  Lead Plaintiffs believe that all members of the Plaintiff Class have incurred similar incidental damages, and that the average incidental damages per Plaintiff Class member is about $8,000.  Alternatively, these amounts are amounts wrongly charged by Defendants which are subject to disgorgement or restitution.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs pray for judgment as follows:

1.     For a judicial determination that the Defendants have no ownership rights in the promissory notes executed by the Plaintiff Class and are therefore not entitled to foreclose on properties secured by said promissory notes or the mortgages issued in connection therewith;

2.     For a permanent injunction prohibiting Defendants from claiming or exercising ownership rights to the loans of Plaintiff Class members;

3.     For incidental monetary damages, or disgorgement, or restitution, of $8,000 per class member;

22

4.     For costs of suit and attorneys' fees incurred herein; and

5.     For such other, further or different relief as the Court may deem proper.


Dated: October 1, 2010                          BORSTEIN & SHEINBAUM

                                                By:  _____
                                                      Leon Borstein (LB-8892)
                                                Attorneys for Lead Plaintiffs David Rajamin
                                                and Edith Gonzalez Larios

23